# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES E. WASHINGTON, JR.,

                 Plaintiff,

        -vs-                             Case No.   10-C-0004

JOHN P. HIVELY,

                 Defendant.

## DECISION AND ORDER

The plaintiff, James E. Washington, Jr., filed a *pro se* complaint alleging that his civil rights were violated while he was a federal pretrial detainee at the Waukesha County Jail. He was allowed to proceed on a sexual harassment claim against defendant Officer John Hively regarding the pat-down search and the strip search Hively conducted on April 24, 2008. Now before the Court is the defendant's motion for summary judgment.

### I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. FACTS

The Court commends the parties on their productive use of proposed findings of facts, responses, and replies, but notes that, at times, the defendant ignored the fact that an affidavit is evidence, *Lax v. City of South Bend*, 449 F.3d 773, 774 (7th Cir. 2006). With respect to material issues in this case, a person comparing the plaintiff's version of events with that of the defendant "would be forgiven for thinking that each was recalling an entirely different event." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

> The standard of review governing summary judgment, however, resolves at least one question: we must accept all facts and reasonable inferences in the light most favorable to the non-moving party - here, the plaintiffs. We do not judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact.

*Id*. (Citations omitted). Thus, where there are disputes, the court will present the plaintiff's version of the facts. Otherwise, the undisputed facts come from the parties' proposed findings of fact and affidavits.

## A. Background

The plaintiff, James Washington, was a federal pretrial detainee being housed at the Waukesha County Jail (the "Jail"). Defendant John Hively is employed by the Waukesha County Sheriff's Department as a jail officer.

Washington was arrested in 2007 on federal criminal charges. Pending disposition of his criminal case in 2010, he was confined at the Jail under the authority of the United States Marshal. While at the Jail, Washington was subject to at least eighteen outbound pat-down searches and inbound pat-down and strip searches other than the search at issue in this case. He was never found to be in possession of any drugs, weapons, or other contraband. None of the other searches were conducted by Hively, and none occurred in a manner that Washington considered to be overly aggressive, intrusive or offensive. This action is the only time Washington has filed a complaint about any aspect of any search he has ever undergone at any jail or prison.

3

Prior to April 24, 2008, Washington had only limited interactions with Hively, and none of those exchanges had resulted in confrontations or conflicts. Nor had they created any known animosity between Washington and Hively.

## B. Pat-Down Search

On April 24, 2008, Washington was returned to the Waukesha County Jail from federal court with three other inmates. He came into the Arresting Officer Vestibule, a/k/a the intake area, with three other inmates also returning from federal court. Inmates returning to the jail are subject to a pat-down search and strip search upon entry. Hively began the pat-down search of Washington. He told Washington to stand against the wall and put his hands on the wall. Hively started with Washington's arms and upper body and then moved to his waist and hips. Hively then inspected Washington's sock and started up his inseam. Hively went up Washington's inseam to his crotch, then held his hand at the side of Washington's testicles at the apex of his crotch for two to three full seconds. After Hively searched the first leg, Washington turned his body around to face Hively and he asked Hively what he was doing. Washington stated that he did not like the pat-down search, and Hively told Washington to relax and that he was doing his job.

Hively searched the second leg in the same manner as the first, except that Hively held his hand in Washington's genital region a full three to four seconds, again rubbing against the testicles and then shifting his hand to a horizontal position with it titled in a manner that brought part of it into contact with Washington's penis. Washington complained even

more vigorously but was again told by Hively that he was merely doing his job. After conducting the pat-down search of Washington, Hively patted down the other three inmates using the same technique.

Washington first became uncomfortable during the pat-down search when Hively moved his hands down his shoulders. Washington got a feeling that it was not a normal search, that he was being touched in a sexual manner. Hively did not use more force and did not grab Washington's arms or chest, but the plaintiff avers that there was something not right about the way that Hively was feeling his body.

Hively concedes that he may have made brief contact with Washington's clothed crotch. Hively asserts that he applied the blade technique, with his thumb tucked in and fingers straight, during the entire pat-down search, consistent with department policy and his training and experience. Officer Hively has received training with regard to searching inmates through the Academy in Milwaukee County and in-house training at the Jail.

Washington submits that Hively did not maintain his hands rigidly in that position, but instead held them more loosely, with his fingers spread apart, moving them in a more casual rubbing or caressing manner that conveyed to Washington an inappropriate sexual purpose.

## C. Strip Search

After completing the pat-down searches, Hively placed the four inmates in a holding cell and began to conduct individual strip searches of the inmates in a separate dressing

room.  Hively believes Washington was the first of the four inmates to be strip searched, and Washington believes he was the last one searched.  The order of the strip searches of the four inmates is not material.  In all other instances in which Washington was subjected to or saw others being subjected to a strip search, the inmates were escorted in pairs to the dressing stall room and placed in separate but nearby stalls within earshot of each other.

As Hively escorted Washington to the dressing room area, Hively asked Washington why the pat-down search upset him.  Washington responded that he had never before experienced such an aggressive or sexually intrusive search.  Hively felt that Washington was acting strangely and wondered if he might be hiding contraband.  Before reaching the dressing stall, Hively and Washington exchanged a few more words, but Hively never told Washington about possible inmates "crotch" contraband, nor did Hively say or do anything else to reflect any extraordinary concern that Washington was attempting at that time to bring contraband into the Jail.

Washington removed his clothes and then handed them to Hively for inspection.  Unlike any other officer Washington has dealt with in any prior or subsequent strip search, Hively was standing within arms' reach of the dressing stall doorway, watching Washington intently, with the door held wide open.  Hively observed Washington while he was in the dressing stall.  Washington maintains that Hively did not need to leave the dressing stall door open to observe all areas of the stall during a search.  Washington felt uncomfortable because Hively had the stall door open.

6

After Washington removed his clothing, Hively instructed him to open his mouth, show his hands, lift his arms, lift his genitals, turn around, squat, cough, and lift his feet up one at a time. Washington complied with the instructions. Hively was within arms' reach of Washington during the entire strip search. When Washington assumed the vulnerable squat position facing away from Hively, Hively reached into the stall, between Washington's legs, and grabbed and groped Washington's genitals in a sexual manner for at least several seconds, the time it took for Washington to comprehend what was happening and then jump around to confront Hively. Washington immediately objected by angrily demanding an explanation for the groping perpetrated by Hively. Hively again said he was only doing his job. When it became obvious that the incident could not be amicably resolved by the men, Washington returned to the holding cell, where he expressed his outrage to the other inmates there. Hively never overtly stated a sexual desire or a desire to degrade or humiliate Washington.

As soon as Washington returned to the general population living pod at the Jail, he vigorously objected to Hively's indiscretions to the correctional officer on duty in his pod. The officer directed Washington to speak to the lieutenant on duty that day who, in turn, told Washington to write to Lieutenant Zarate or to the Jail surveillance department staff. Washington did both. An investigation was conducted by Captain Healy, Lieutenant Zarate, and possibly others. The investigation determined that Washington's complaint was unfounded. Washington denies that the incident was fully investigated and asserts the conclusion was incorrect.

Washington has not sought medical treatment or counseling as a result of the incident on April 24, 2008. He did not suffer a physical injury as a result of this incident, but he asserts emotional and mental distress. Washington avers that his lack of counseling or other treatment is, for all practical purposes, a function of his incarcerated status and thus beyond his control. For example, he has not had access to truly private counseling and, due to the embarrassing nature of the matters he would have to discuss (potentially in a group inmate setting), it would be virtually impossible to keep such disclosures confidential.

Washington's distress has been manifested, in other ways, by: (a) troubling dreams, which interrupt his sleep and which began within days of the incident, in which he recalls or relives aspects of its occurrence; (b) his internalization of anger about his humiliation, which led to a heightened aggression in response to a subsequent racial insult; (c) feelings of shame arising from his lack of power to physically defend his honor by reacting to Hively's indiscretions; (d) a withdrawal from social interaction due to a concern that his grief and frustration would be disclosed and potentially made subject to ridicule; and (3) an abiding sense of tension whenever he relives the experience. Prior to April 24, 2008, Washington had never suffered any of these conditions or symptoms. Since April 24, 2008, Washington's distress has grown worse, the more time he has to ponder over and dwell upon the humiliation to which Hively subjected him.

Waukesha County Sheriff's Department/Jail Division Policy and Procedure 356.10(7)(c) provides: "PRIVACY. The inmate will be exposed to the view of only those

8

correctional officers conducting the search." (Doc. 26-6, p. 4). Waukesha County Sheriff's Department/Jail Division Policy and Procedure 356.10(7)(b) provides: "NO CONTACT. Only a visual inspection will be made." Waukesha County Sheriff's Department/Jail Division Policy and Procedure 356.10(7)(e) provides: "REMOVE CLOTHING. The inmate will be instructed to remove all clothing and hand it to the correctional officer for inspection." These policies do not authorize the correctional officer conducting a strip search to touch the inmate while naked.

### III. DISCUSSION

The defendant contends that he is entitled to summary judgment because his searches of the plaintiff did not violate the plaintiff's constitutional rights. He also argues that he is entitled to qualified immunity, that the plaintiff was not allowed to proceed on state law claims, that the plaintiff failed to comply with the Wisconsin Notice of Claim statute, and that 42 U.S.C. § 1997e(e) bars the plaintiff from recovering compensatory damages because the plaintiff suffered no physical injury.

In response, the plaintiff submits that this is a classic "he said, he said" confrontation about the searches and that this fundamentally material factual dispute precludes summary judgment and can only be resolved at trial. The plaintiff's argument presupposes that a constitutional violation will be found if his version of events is accepted as true. That is not necessarily the case.

[T]he legal standard for a § 1983 claim is the same under either the Cruel and

Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment." *Whiting v. Marathon County Sheriff's Dep't*, 382 F.3d 700, 703 (7th Cir. 2004) (citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003)). "The protections for pretrial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner, and we frequently consider the standards to be analogous." *Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002).

The Seventh Circuit has observed, "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Instead, the Constitution prohibits only the unnecessary and wanton infliction of pain, and thus forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Id.* at 939 (citation omitted). Only those searches that are "maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). Accordingly, to prove a due process claim, the plaintiff must show that a search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

In *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), the Court of Appeals for the Second Circuit affirmed the dismissal at screening of a prisoner's claim. According to Boddie, a female correctional officer made a pass at him one day and then the next day

squeezed his hand, touched his penis, and made a comment in which she referred to him as a "sexy black devil." *Id*. at 859-60. The correctional officer also pinned the plaintiff against the wall with her chest. *Id*. at 860. The Second Circuit acknowledged that allegations of sexual abuse may meet both the subjective and objective elements of the constitutional test for an Eighth Amendment claim, but determined:

> He asserts a small number of incidents in which he allegedly was verbally harassed, touched, and pressed against without his consent. No single incident that he described was severe enough to be "objectively, sufficiently serious." Nor were the incidents cumulatively egregious in the harm they inflicted. The isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.

*Id*. at 861 (citations omitted).

Additionally, the Courts of Appeal for three other circuits have upheld in unpublished cases the dismissal of or grant of summary judgment on claims similar to Washington's claims in the present case.

In *Jackson v. Madery*, 158 Fed.Appx. 656 (6th Cir. 2006), the Sixth Circuit affirmed a grant of summary judgment. There, the defendant rubbed and grabbed the plaintiff's buttocks in a degrading and humiliating manner during a shakedown in the prison food area. *Id*. at 661. The plaintiff immediately pulled away, objected, and asked to see a supervisor. *Id*. He also had three witnesses who supported his claims. *Id*. Even taking the plaintiff's allegations as true, the court determined that "the incident does not rise to the level

11

of cruel and unusual punishment under the Eighth Amendment." *Id.*

In *Allen v. Johnson*, 66 Fed.Appx. 525 (5th Cir. 2003), the Fifth Circuit affirmed the dismissal of a complaint at screening. Even where the defendant touched the plaintiff in a sexual manner during routine pat-down searches, the plaintiff "has not alleged sufficiently serious assaultive behavior or resulting injury to show a constitutional deprivation." *Id.* (citations omitted).

Most similar to the present case, the Eleventh Circuit affirmed the district court's granting of a motion to dismiss in *Washington v. Harris*, 186 Fed.Appx. 865 (11th Cir. 2006). In that case, the complaint alleged that the defendant crept up behind the plaintiff while he was working and grabbed his genitals. *Id.* at 865. The plaintiff resisted and turned around, at which time the defendant kissed him on the mouth and threatened to perform oral sex on him. *Id.* The district court granted the defendant's motion to dismiss, "finding that Washington's allegations, taken as true, fail to establish a constitutional violation and instead amount to a simple case of assault and battery." *Id.* at 866. The Eleventh Circuit found no error and stated:

> To allege a violation of a prisoner's Eighth Amendment rights, a complaint must state facts that establish an objectively serious injury. Assaults that result in only de minimis harm do not rise to the level of constitutional infractions unless the behavior of the officer in question can be deemed "'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (internal citations omitted). Although Washington alleges that he was subjected to an offensive and unwanted touching, he alleges only momentary

pain, "psychological injury," embarrassment, humiliation, and fear. These de minimis injuries do not rise to the level of constitutional harms, and Deas's conduct, while inappropriate and vulgar, is not repugnant to humanity's conscience. Moreover, even assuming that Deas's behavior was sufficiently repugnant to give rise to a constitutional claim, no case law clearly establishes that such conduct violates the Constitution, and thus we cannot say that any reasonable officer would have known of it. The district court did not err in dismissing the § 1983 claims.

*Id.*

The Court is aware of no connection between the plaintiff in the Eleventh Circuit case and the plaintiff in this case. Yet the facts are similar, and the same analysis applies. In this case, even viewed in the light most favorable to him, Washington has presented evidence of only de minimis injury. The court allowed the plaintiff's claim to proceed at screening, in case there was additional evidence regarding the defendant's actions. However, at summary judgment, the plaintiff has presented no evidence regarding the subjective intent of the defendant. At summary judgment, the court must presume that the defendant grabbed the plaintiff's genitals in a way that was not related to penological interests. Nevertheless, without more, the plaintiff suffered at most an assault and battery and there is no constitutional dimension to the plaintiff's claim. Washington's feeling that the pat-down search was sexually motivated and the brief grab and grope of his penis during the strip search are simply not enough to sustain on a constitutional claim.

## IV. ORDER

**IT IS THEREFORE ORDERED** that the defendant's motion for summary

13

judgment (Docket #20) is **granted**.

        **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

        Dated at Milwaukee, Wisconsin, this 22nd day of February, 2012.

                         **SO ORDERED,**

                         **HON. RUDOLPH T. RANDA**
                         **U. S. District Judge**